Next case is Hillary v. Village of Providence May it please the Court. The District Court improperly granted summary judgment on Mr. Hillary's equal protection claim of selective prosecution, and in doing so, wrongly deprived him of a jury trial. While the District Court's decision was based on numerous factual and legal errors, for purposes of oral argument today, I'd like to focus on two. The evidence in the record of Mr. Murray's racial animus, and the possibility that he had mixed motives, one of which was the discriminatory one. With respect to evidence of racial animus, as we all know, and certainly as this Court knows, direct evidence of discriminatory intent is rare. It's hard to find a case where they have direct evidence like that. And so the Court should have focused on the plethora of circumstantial evidence that was present on this summary judgment record. As the Supreme Court and as this Court have defined, there are certain types of circumstantial evidence that you particularly look for in these types of cases. I think the most important category here would fall under departures from ordinary procedure. This was, of course, a murder investigation, and there were several we would consider serious departures from ordinary procedure. Starting right at the beginning, when the police were going to notify Garrett's mother about what had happened, one of the suspects at the time, Mr. Jones, was allowed in the office with her. Being present in the office with her. Shortly after that, there was a canvas done of the neighborhood where the murder took place. When you said one of the suspects, I'm sorry to interrupt. I want to hear the rest of that. But just to be clear, was he identified at that time as one of the suspects, or is your argument that he should have been identified as one of the suspects? Well, in the record, I believe, I think it was Officer Wentworth, the first officer on the scene, said, and I apologize, I don't know exactly where in the record he said it. I could provide that to the court, that he wasn't sure at that time if Mr. Jones was a suspect. Certainly, Mr. Murray himself prepared, certainly a memo was prepared, and Mr. Jones gave a statement, I believe it was a four-page statement that's in the record, as to where he was and setting forth his alibi. I would just suggest that anybody who's asked to set forth an alibi is at least a target, if not a suspect. Shortly after that, when performing a canvas of the neighborhood, Mr. Jones' house was skipped. It was just left off of the houses that they were knocking on the doors. And perhaps most seriously, a few days after the murder, when Mr. Murray was filling out his probable cause affidavit for Mr. Hillary, he simply manufactured evidence. He said that he had seen Mr. Hillary at a soccer game the day after the murder, and he noticed him walking with a limp, and of course, that would be suspicious in this case, where the facts showed that the murderer jumped out of a second-story window to escape the scene. And this was simply made up, as the court can find and can watch itself in the videos at the record A198 through 200. Mr. Hillary was at that game. He was not walking with a noticeable limp. And in fact, even at Mr. Murray's own deposition, when he was shown those videos and asked to identify a limp, he could not or refused to do so. And then one more serious departure from ordinary procedure here was the Brady violation. Shortly before Mr. Hillary's criminal trial, at which he was acquitted, Mr. Murray and one of his subordinates went to interview a witness. Well, I'm sorry, Your Honor, withdrawn. The interview of the eyewitness was several months before the trial, but where this incarcerated eyewitness stated that he saw Mr. Jones and not Mr. Hillary at the scene. This statement, highly exculpatory, and it's not just our opinion, of course, the criminal trial court also found that it was material, was withheld, not disclosed to the prosecutor, and when it finally was disclosed to the prosecutor, was turned over shortly before trial. And the trial court's basis for saying it didn't constitute a Brady violation affecting the outcome of the trial was it was provided an adequate time to make use of it, but not that it wasn't exculpatory. Sure, Your Honor, and I just don't want the court to make the same mistake that Mr. Murray makes in his brief, where he says there was no Brady violation because the court didn't dismiss the indictment. It's a confusing remedy with violation. Well, the court did not determine that it wasn't exculpatory. The court just determined that it was provided in time to make use of it. Precisely, and I guess the simplest way to say that it was Brady material, no doubt about it. We'll stop there because that's enough. But you're not here appealing. This isn't a Brady appeal, right? And so you're citing that as evidence of racial animus. As circumstantial evidence that because of these several, I mean, any one of these was a serious departure from the ordinary procedure of a murder investigation. When taken together, they start to be circumstantial evidence of something going on here. And as the court's decision, as I said, departures from ordinary procedure can be found to be circumstantial evidence of discriminatory animus. Now, I would like to move on to the next factor, the weakness of the defendant's proffered non-discriminatory motive. This is essentially a credibility question. When a defendant's, we would say pretextual, but when their stated reasons for the disparate treatment just don't hold water, that also can be circumstantial evidence of discriminatory intent. You cite lack of diversity in the police department as circumstantial evidence of racial bias. Is there any indication that the defendant Murray had any control over the hiring or the makeup of the police department at that time? I don't believe so, Your Honor. Certainly not while he was a lieutenant as the, you know, we don't dispute what the defendant says in his brief where he says that, you know, there are civil service lists and you have to do an analysis of who's on the list, what the population pool is in the local area. We don't dispute that. I will note that he did become chief of police afterwards, and to the extent that that's not persuasive, I think the more important point is that all of the reasons that they give for the disparate treatment were either just as true for Mr. Jones or even more true, and I'll give three examples. Number one, the opportunity to gain access to the apartment. That was one of the reasons given for focusing immediately on Mr. Hillary. Josh Jones, as the court is aware, was also in a relationship with Tandy Cyrus, also lived with her, also had a relationship with Garrett, also could have gotten into the apartment. I understand that Mr. Jones, your argument that Mr. Jones was also a suspect, but the issue here is whether Mr. Jones is motivated by racial bias. Right. And what I'm trying to see is where is the evidence of that? Well, this is the evidence. The evidence of disparate treatment, and then added to that, the weaknesses and the explanations for that disparate treatment. Is the disparate treatment because you don't believe a fellow officer could have committed a murder versus you're focused on someone who is a particular racial or ethnic group? It may very well be, Your Honor, but that brings me to my second point, that the district court's decision doesn't consider the issue of mixed motive. This is not a Fourth Amendment claim where the existence of probable cause excludes all other motive, excludes the possibility of a violation. Here, if racial atomist could be one of many motives, perhaps Mr. Murray was motivated by the fact that Mr. Jones was in law enforcement, that they had a prior relationship, could also be motivated by the fact of the defendant's race. As this court has said, atomist only has to be one factor of many. It doesn't have to be the sole, the primary, or even the predominant motive. The district court sort of confused that issue a little bit when it said that Mr. Hillary was required to prove that racial animus must have caused the disparate treatment. Well, there could be many causes for the disparate treatment. The defendant says, and Your Honor suggests, that perhaps a likely motivation was the fact that Mr. Jones was in law enforcement. They also say that they were likely motivated by Mr. Hillary's behavior shortly after the murder. And maybe that is the case, but that is for a jury to determine. The jury could also determine, based on the reasons I've stated, that racial animus was one of them. Or, if the defendant's behavior was one of the reasons for the disparate treatment, maybe that behavior was viewed through the lens of racial animus. These are possible. These go to very complex questions. This is a very deep record, the evidence that was accumulated over years. These are precisely the type of complicated factual issues that it's for a jury to determine. And I'd like to say one more thing, if I can, before I sit down. Is that okay? Briefly. Thank you, Judge. We all know that a jury has to decide a case just on the evidence presented in the courtroom. But we also encourage juries to bring their common sense and life experience into the deliberation room with them. Anybody who's paying any attention over the last few years knows that a reasonable juror can harbor doubts about the motivations of law enforcement in certain cases. And the district court's ruling effectively precluded that possibility. And for that reason, we ask that a jury trial be ordered in this case. Thank you. Good morning. May it please the court. Greg Johnson from Johnson & Laws on behalf of Mark Murray. I also represent the village defendants who are no longer appellees at this point. I'm going to briefly, if I could frame my argument in terms of time first, and then I'm going to briefly try and address some of the issues that was raised by appellant's counsel. As this court knows from the docket and from my brief, this is Mr. Hillary's second lawsuit. And the prior lawsuit was brought in 2012, alleging many of the same things. Timely attacking the 2011 investigative activities that have been discussed in large part today and are discussed throughout appellant's brief. That case, that 2012 case, included an equal protection claim against my client, all my clients. They had full discovery. They had motion practice. And we had a plenary trial before a jury in June of 2022 that resulted in a defense verdict. So we're here. This appeal, just if I could, is about the conduct or the state action more precisely of Mark Murray between 2014 to 2015, since this action was of course brought on May 15th, 2017, three years from the day that he was indicted and arrested based on an arrest warrant. Can you help me understand something then? Because I understood this case to be a selective prosecution case. And I understood that a selective prosecution case doesn't ripen until after the acquittal. And so to the extent that the same body of conduct that you're describing is the body of conduct that led to the alleged selective prosecution, how can it not be within the scope of what we look at in the context of this selective prosecution case? Well, I think, Judge, the answer to that is I'm not sitting here saying that the history of the investigation going back to 2011 is irrelevant. For example, hypothetically, if there was evidence from 2011 of actual racial animus and motivation, that could be circumstantial evidence as to what Mark Murray did in 2015 or 2016. What I'm saying, though, is that we're not here talking about some action that Mark Murray took in 2011 or didn't take. That case has been litigated. What I'm just simply saying is that while the history is certainly relevant, and I addressed that in my brief, and Mark Murray addressed it in the record, of course it's relevant. But the issue here is under basic 1983 elements are is there any evidence in this record that state action that Mark Murray took from May 15, 2014 until May 15, 2017 was motivated by impermissible constitutional bases that caused an injury to Mr. Hillary, and the two were causally related. That I'm just framing the case, and so- And the district court didn't limit itself in this way. Am I misremembering the district court's decision? I'm sorry. Are you presenting sort of an alternate ground for affirming? Oh, no, Judge. No, I'm just trying to- Did the district court say because of the prior litigation, arguments as directly predicated on conduct pre-whatever the date is that's within the statute of limitations is not fair game for consideration as a basis for liability for your client? The district court in deciding our motion to dismiss earlier in this litigation most certainly said that this case is limited to the actions in 2014-2015. I raise that argument on the motion to dismiss because of the 280 paragraphs in this complaint, 90% of them related to issues that were outside the statute of limitations. The plaintiff at the motion to dismiss stage did not object to that and acknowledged it, and so in the motion to dismiss decision, Judge Sharp indicated that this case is about actions in 2014-2015. That's been the law of the case throughout, and so I do think that when you read the NDO granting a summary judgment, that, of course, that's the premise, and although I agree it was a short decision, the judge did not bifurcate which allegations he's considering and which he didn't. So just making sure I'm understanding my reading of the summary judgment decision, you can consider, for instance, your adversary led with departures from ordinary procedure. You could consider those as part of the summary judgment record. Do they evidence that there was racial animus in connection with the decision to bring the case forward, the selective prosecution claim that's within the statute of limitations? Am I understanding? Yeah, exactly, Judge. I'm not disputing the fact that it's part of the history and it could be relevant circumstantial evidence, but the plaintiff's burden in this case was to come forward with evidence that some state action that Mark Murray engaged in that caused him an injury was motivated by impermissible motives. So not only is there no evidence of impermissible motives, which I'm going to address in a moment, but more importantly, when you look at the four corners of this 280-paragraph complaint, there's really only one timely allegation concerning Mark Murray's conduct, and that related to the May 15, 2014 arrest after the grand jury indicted him, after an arrest warrant was issued, after the judge directed Mr. Hillary to show up, and he declined to do so, and my client was directed by the DA to go out and effectuate an arrest. That's the only timely allegation in this complaint, in the four corners of this complaint. If we are to indulge this notion that this Brady theory, which was not in the complaint, not referenced in the complaint, not mentioned in the complaint, was raised in discovery and now is on the forefront of their motion, I would like to address that issue, because most certainly that does not establish an equal protection claim against my client. Okay, but just, I want to, I'm sorry to keep going back to the same point, but you've articulated a theory that says there's only one act, one state act by your client in the relevant period. That feels like a very different analysis from what I saw in the district court summary judgment decision, which talked about your client's conduct in the context of the investigation, immediately following the homicide and everything that he did back then, and you're saying that's not fair game. And I'm just trying to understand whether that's an alternate theory that you're offering, because it's de novo review, and that would be fair game. Right. Or whether there's something I'm missing in the district court's decision. No, Judge, I think the court was responding to the briefs, and both of us, both parties at the motion for summary judgment stage, put in a record of over 600 pages of materials. That included, most definitely included, what happened in 2011 as soon as this homicide occurred. I am not saying it's not fair game for consideration. I'm not saying there could hypothetically have been evidence of racial animus in 2011 by a player, including my client, hypothetically, and that that would be relevant to consider in light of any state action my client took. My point simply is we're here to consider this 2017 litigation, and it is confined in terms of state action to what Mark Murray did during that period. The history is relevant, not suggesting it's not. I'm simply saying that if the argument, which it appears to be now, that my client violated his constitutional rights in October of 2011, I'm simply saying that's not part of this case, it's time barred, and it was tried and rejected by a jury in the 2012 case. That's all I'm simply saying. I'm not saying it's not relevant. I'm not saying it's not fair game to consider if it included circumstantial evidence. Have I answered your question? I think so. All right. I apologize if it took long to get there, Judge. If I could, let me address this Brady issue. I did try and address it in my brief, footnote 18, page 7, but I do want to point out to the court that Mr. Fitzpatrick, the special prosecutor in this case, was a defendant throughout discovery in this case. Mary Rain, the district attorney, who undoubtedly admitted under oath in the evidence that the plaintiff put in front of this court, undoubtedly is the one responsible or has a Brady obligation in the first instance. If the plaintiff genuinely believed this notion that somehow my client was responsible for a Brady violation or delaying the turning over information, they could have sought information about transmittal correspondence, faxes, emails that went from my client or even the police department at large to the district attorney. They didn't pursue any of that. In fact, in the record, it's not even clear what material my client supposedly was delayed in turning over. So we have a record here that doesn't even include the material that we're talking about. I don't even know what it is as it's here today. Number two, is there any evidence that my client is the person who transmitted it to the DA's office? There's no evidence as to who in the district attorney's office received it. And most importantly, there's not a shred of evidence as to the date that they received it. The only thing in this record about that issue is that on September 13th, 2016, the criminal defense team for Mr. Hillary told the judge that we just received this material from the DA yesterday. And that he deemed it to be exculpatory material. We also know from the record that this entire issue of Gregory Brown's testimony from the Attica prison was prompted by Gregory Brown's attorney calling, not Mark Murray, Mary Rain, the district attorney. Mary Rain then directed the New York State police investigator, Levinson, who was also once a Plano defendant in this case, and told him to go to Attica. And my client's role was to go with him to Attica and take notes of his investigation of Gregory Brown at the behest of Mary Rain, the district attorney. On top of all that, the record includes the fact, undisputed, that Mary Rain got on the phone from Attica and spoke directly with investigator State Police Levinson, not my client, about the interview that was going on. So, to be honest, Mark Murray can't even defend himself against this. Not only is it not his obligation legally, there's not a shred of evidence of what we're actually talking about. And there's not a shred of evidence that he delayed. There's an innuendo, there's an argument, and that's what summary judgment's about. And that's what discovery was about. So I just submit to the court that not only did he not amend his complaint, not only can he amend his complaint now, but even had he done so, it was his obligation to develop that evidence during discovery before he comes and make this argument. One of the questions that I'm trying to figure out just process-wise, in other kinds of discrimination contexts, legal contexts, we follow this McDonald-Douglas framework. Where if there are allegations that similarly situated people are treated differently, it shifts the burden of production to come up with a non-protectional explanation for why the ultimate burden of proof remains the same. There was still a little bit of argument about this that sounded like that. That wasn't the framework that the district court applied. And I'm just wondering whether in your view that's an appropriate framework for this kind of discrimination context. Yeah, I mean, I don't think the precedent connects those two lines of analysis. Right. And so doctrinally or jurisdictionally, I think the answer is no. But I can also say if you look at this record, that was done. I mean, Mark Murray has two declarations that very specifically go through his thought process and his decision-making process. So even if the McDonald-Douglas shifting burden framework were applicable, and I respectfully don't think it is, then that clearly was satisfied. Well, then we'd have to decide, I suppose, whether there's a genuine issue of fact as to whether the explanation was protectional. And that's what I'm trying to figure out is because the district court, rather than sort of slogging through the question of whether a jury could find that they were in fact similarly situated, assumed for the sake of argument, assumed for the sake of this decision that these two individuals were similarly situated, and then went on to this question of whether there was evidence of racial animus. And having made that assumption that they were in fact similarly situated, I'm just trying to figure out whether you can really, whether you need more, whether that changes the calculus of the analysis. Yeah. Well, I think this court in you has made the test fairly simple, which is you need differential treatment to do similarly situated parties, and you need to show that that differential treatment was based on racial animus, which Judge Sharp clearly indicated was not, and I think is absolutely abundantly clear from this record. So in your view, the burden of production in this context never shifts, that the plaintiff needs to show the similarly situated and proffer some evidence of racial animus. There's not a burden on the other side to come forward with an explanation of the- I think that's how the analysis works, Judge. But if this court were to apply a McDonnell-Douglas analysis, I think the record would lead you to the same conclusion. Can I have 30 seconds to just address one more issue? Yes. Just very briefly, as I mentioned a moment ago, Mark Murray's testimonial contributions to this record are substantial, and that's in the record, but it's also remarkable what plaintiff did and didn't proffer in this case. And as the record indicates, and as my brief lays out, he was asked a very specific question. He's a college-educated person. He was asked, do you have any factual information that anything Mark Murray did caused you an injury after 2014? His answer was, I can't speak to that. He was asked specific questions, do you have any information that anything Mark Murray did after 2014 was motivated by your race, your national origin, or your ethnicity? And his answer was, no, I can't speak to that. And then when I asked him why he sued Mark Murray in this case, in this 2017 case, his answer was because of the interview that he sat in by State Police Investigator Snell on October 25, 2011. So his testimonial contribution to this record makes very clear the absence of racial motive. Thank you. Very briefly, Your Honors, I just have three quick points to make. With respect to Your Honor's question about what the district court actually decided in the summary judgment decision on review here, he did not decide that the pre-2014 events could not be evidence in this case. Of course he couldn't do that. Why not? Well, it wasn't a, I think such a decision would be more appropriate for pre-trial in limine motions. What evidence would not come in at trial. But the claim is that there needs to be some act by Mr. Murray within the statute of limitations to support this claim. And if the claim is anything that he did before, and again, I'm sorry I don't have the date in front of me, might be relevant sort of to show motive and circumstantial evidence, but it's not the act. Is he right about that? And if so, what's the act you're hanging your hat on? Well, I don't think the defendant, and I'm sure he'll correct me if I'm wrong, I don't think he's disputing that there is an act, at least one act, and certainly the racial animus underlying that act could be proven through actions that he took prior to the statute of limitations period. What is that act? This is the arrest after the indictment? Exactly. Okay. And he could be proven, say, under 404B for absence of mistake or intent. I mean, one of the 404B purposes is precisely intent. As for the Brady violation, there's significant evidence in the record as to Mr. Murray's personal involvement. I would just give the court a couple of examples. In Judge Katton's decision regarding the Brady violation, he said that ‑‑ I'm sorry. What do we do with the fact that that's not pled, or at least I'm understanding that it's not pled in the complaint? Again, I think it would be evidence. It would be evidence of racial animus that would be admissible at trial. So I draw the court's attention to page 239 of our appendix. And I'm paraphrasing here. Judge Katton is saying there's no question that any note taken from Lieutenant Murray was potentially exculpatory and within the ambit of Brady. And I'd also note that page 174 of the appendix, when District Attorney Raine was asked about this, she said, ask Lieutenant Murray why he did not provide it. So there's ample evidence of that. One more point, judges, and then I'll sit down. I agree with Your Honor that on this record, this summary judgment decision was not ‑‑ he did not dive deep into the analysis. I did say that just to be clear. I'm sorry if I'm mischaracterizing what Your Honor said. There were certain issues that were not raised. I just want to suggest to the court that all of those issues are fully presented here, fully briefed. They're in the record. And this court can and should decide them. Thank you. Thank you both. And we'll take the matter under advice.